# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 9, 2022        Decided December 23, 2022

No. 22-7012

JABARI STAFFORD,
APPELLANT

v.

GEORGE WASHINGTON UNIVERSITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02789)

*Madeline Meth* argued the cause for appellant. With her on the briefs were *Riley Ross III, Brian Wolfman, Esthena L. Barlow*, and *Lauren Lang* and *Ezer Smith*, Student Counsel.

*Janai S. Nelson, Samuel Spital, Alexandra S. Thompson,* and *Michael Skocpol* were on the brief for *amicus curiae* NAACP Legal Defense and Educational Fund, Inc. in support of appellant.

*Jason C. Schwartz* argued the cause for appellee. With him on the brief were *Molly T. Senger, Andrew G. I. Kilberg,* and *Matthew P. Sappington. Michael R. Dziuban* entered an appearance.

Before: RAO and CHILDS, *Circuit Judges*, and TATEL, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* TATEL.

TATEL, *Senior Circuit Judge*: Appellant, a student at George Washington University, alleges that the university discriminated against him on the basis of race in violation of Title VI of the Civil Rights Act of 1964. Given Title VI's silence on the topic, we must determine whether the appropriate statute of limitations is the one-year period contained in the District of Columbia Human Rights Act (applied by the district court) or the three-year period contained in the District's residual statute, which covers personal injury actions (urged by appellant). For the reasons set forth below, and treading the path of the eight circuits to have addressed the issue, we hold that the proper limitations period for Title VI cases brought in this circuit is the three-year residual limitations period.

**I.**

Jabari Stafford enrolled in George Washington University (GWU) and joined the men's tennis team in fall 2014. According to Stafford, who is Black, he almost immediately became the target of racist jeers and attacks from his fellow teammates. Stafford alleges that he sought help from several school officials, including head coach Greg Munoz and tennis team administrator Nicole Early. But no help came. In fact, Munoz did more than fail to stop the racist harassment: according to Stafford, he participated in it. By his senior year, Stafford's grades were suffering, and GWU placed him on academic suspension. Stafford's internal appeal of this suspension was denied, and he never returned to GWU.

Stafford filed suit in district court in November 2018, alleging that GWU's deliberate indifference to racial harassment created a hostile environment in violation of Title VI, 42 U.S.C. § 2000d, which prohibits racial discrimination by institutions that accept federal funds. After the district court denied GWU's motion to dismiss on grounds not relevant to this appeal, the parties proceeded to discovery. GWU then moved for summary judgment, arguing that Stafford's claim was barred by the one-year limitations period contained in the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1403.16. The district court, finding that none of the alleged misconduct occurred within that one-year period, granted summary judgment to GWU. *Stafford v. George Washington University*, 578 F. Supp. 3d 25, 41 (D.D.C. 2022). But recognizing the novelty of its holding, the district court went on to explain that if the three-year residual personal injury limitations period applied, it would have found a genuine issue of material fact and denied summary judgment. *See id.* at 44–45 (applying D.C. Code § 12-301(8)).

Stafford appeals, arguing that the district court should have used the three-year limitations period, D.C. Code § 12-301(8). GWU defends the district court's use of the one-year statute and argues, alternatively, that summary judgment would have been appropriate even under the longer three-year period. "We review the district court's grant of summary judgment de novo." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

**II.**

Congress often creates federal causes of action, as it has in Title VI of the Civil Rights Act, without specifying a limitations period. In those situations, "we do not ordinarily assume that Congress intended that there be no time limit on

actions at all." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983). Instead, the "settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985). We must select the "most appropriate" or "most analogous" state statute of limitations. *Id.* at 268 (internal quotation marks omitted). How to characterize a federal cause of action to determine which state statute is "most analogous" is "ultimately a question of federal law." *Id.* at 270 (internal quotation marks omitted).

We "borrow the 'appropriate' state statute of limitations when Congress fails to provide one because that is Congress' directive, implied by its silence on the subject." *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 164 (1987) (Scalia, J., concurring in the judgment). Congress has encouraged this practice in the civil rights context. Section 1988 of title 42, which applies to causes of action under titles 13, 24, and 70 of the Revised Statutes (a predecessor to the United States Code), instructs courts to adopt "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction . . . is held" to provide any "provisions necessary to furnish suitable remedies and punish offenses" as long as applying the state law is "[c]onsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a). Although section 1988(a) does not apply here—Title VI was enacted after the Revised Statutes—the Supreme Court has interpreted section 1988(a) as "endors[ing]" its long-standing "borrowing" practice. *Wilson*, 471 U.S. at 267.

Accordingly, we must identify the state statute that is "most analogous" to Title VI. But we do not do so in a vacuum. The Supreme Court, in a trio of cases—*Wilson v. Garcia*, 471 U.S. 261 (1985); *Goodman v. Lukens Steel Co.*, 482 U.S. 656

(1987); and *Owens v. Okure*, 488 U.S. 235 (1989)—has given us ample guidance on the borrowing analysis in the civil rights context. Those cases establish an obvious direction: they apply personal injury statutes of limitations to federal civil rights causes of action. Or if the state has no general personal injury statute, like the District, the Supreme Court has instructed courts to apply the "residual statute of limitations governing personal injury actions." *Owens*, 488 U.S. at 245–46. Not only that, but every one of our sister circuits to have undertaken this analysis for Title VI claims has so ruled, *see Monroe v. Columbia College Chicago*, 990 F.3d 1098, 1099–1100 (7th Cir. 2021) (citing cases), as have we in an unpublished judgment, *Dasisa v. University of District of Columbia*, No. 06-7106, 2006 WL 3798886 (D.C. Cir. Oct. 3, 2006) (per curiam). Agreeing with these decisions, we hold that the District's three-year residual statute of limitations applies to Title VI claims brought in the District of Columbia.

Our starting point is *Wilson*, where the Supreme Court held that the appropriate statute of limitations in a section 1983 case is that of the state's personal injury statute because the "essence" of a discrimination claim—the "nature of the . . . remedy"—is personal injury. 471 U.S. at 268, 276. As the Court pointed out, the Constitution itself commands that "no *person* shall be . . . denied the equal protection of the laws." *Id.* at 277. The Civil Rights Act of 1871, codified at 42 U.S.C. section 1983, which reinforces the Fourteenth Amendment, similarly references each "person['s]" rights. *Id.* Because the "unifying theme" of these laws is to "recognize[] the equal status of every 'person,'" "[a] violation of [these rights] is an injury to the individual rights of the person." *Id.* (emphasis removed).

A violation of Title VI is likewise an injury to the individual rights of the person. Before the enactment of Title

VI, direct discrimination by state actors was prohibited by the Constitution and enforced by civil rights statutes, but federal funds continued flowing to other entities engaged in racial discrimination. Recognizing that this "indirect discrimination" was "just as invidious," 109 Cong. Rec. 11,161 (1963) (statement by President John F. Kennedy), Congress enacted Title VI to prohibit racial discrimination by all who accept federal funds. Like sections 1983 and 1981, Title VI adds to the protection of each person. "No *person* in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (emphasis added). Title VI acts as a "prohibition of racial discrimination" by organizations receiving federal funds "*similar to that of the Constitution*." *Regents of the University of California v. Bakke*, 438 U.S. 265, 284 (1978) (opinion of Powell, J.) (emphasis added). Because Title VI shares the same essence as section 1983, it too is most analogous to a personal injury statute.

GWU relies on a decision by the D.C. Court of Appeals, *Jaiyeola v. District of Columbia*, 40 A.3d 356 (D.C. 2012), in which that court applied the DCHRA's one-year limitations period to a disability claim brought under both the DCHRA and the Rehabilitation Act of 1973. *Id.* at 367–68. As explained above, however, selecting the appropriate statute of limitations in a federal civil rights action presents a question of federal, not state, law. *Wilson*, 471 U.S at 270. *Jaiyeola*, moreover, conflicts with *Wilson* and *Goodman*. The *Jaiyeola* court asserted that personal injuries were a poor analogy for civil rights claims because "[p]ersonal injury claims need not—and, indeed, typically do not—seek to remedy discrimination at all." *Jaiyeola*, 40 A.3d at 367. In *Goodman*, however, the Supreme Court made quite clear that discrimination is "a fundamental

injury to the individual rights of a person," a quintessential personal injury. *Goodman*, 482 U.S. at 661.

In *Wilson*, the Supreme Court identified a second reason to characterize claims under civil rights statutes like Title VI as personal injury claims. Federal courts, the Court began, must choose a state statute of limitations that will "fairly serve the federal interests vindicated by" a federal statute. *Wilson*, 471 U.S. at 279. The federal interest is "predominan[t] . . . in the borrowing process." *Id.* at 269 (internal quotation marks omitted). The best way to vindicate the federal interests underlying civil rights laws, the Court reasoned, is to select a statutory period that applies to a large number of civil claims. As the Court explained, it is "most unlikely that the period of limitations applicable to such claims" would be "fixed in a way that would discriminate against federal [civil rights] claims, or be inconsistent with federal law in any respect." *Id.* at 279.

There is a third reason to apply the three-year limitations period. The Supreme Court has remarked that a personal injury tort is the only single analogue that could cover such diverse causes of action and accord civil rights statutes "a sweep as broad as [their] language." *Id.* at 272; *see Owens*, 488 U.S. at 249 (applying a residual personal injury statute of limitations to section 1983 claims because of the "wide spectrum of claims which § 1983 has come to span"). Take section 1983. It provides a "uniquely federal remedy" that encompasses numerous topics and subtopics, including "discrimination in public employment . . . , discharge or demotion without procedural due process, mistreatment of schoolchildren, deliberate indifference to the medical needs of prison inmates, the seizure of chattels without advance notice or sufficient opportunity to be heard—to identify only a few." *Wilson*, 471 U.S. at 271, 273. Title VI, too, is "majestic in its sweep." *Bakke*, 438 U.S. at 284 (opinion of Powell, J.). Applying to tens

of thousands of recipients of federal funds throughout the country, it prohibits discrimination in such diverse arenas as housing, education, health, welfare, transportation, and municipal services. True, as GWU points out, Title VI is narrower than section 1983. But section 1981 is significantly narrower than section 1983, and the Supreme Court has nonetheless instructed courts to apply a personal injury limitations period to those claims. *Goodman*, 482 U.S. at 661.

Finally, we have a "practical" duty to avoid "bre[eding] chaos and uncertainty." *Owens*, 488 U.S. at 242–43. "[T]he legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations." *Wilson*, 471 U.S. at 275. Treating Title VI claims as personal injury actions for limitations purposes, as courts do for section 1983 and 1981 claims, "promotes a consistent and uniform framework by which suitable statutes of limitations can be determined for civil rights claims, and serves Congress' objectives by avoiding uncertainty and creat[ing] an effective remedy for the enforcement of federal civil rights." *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996) (internal quotation marks omitted). Not only does this practice promote uniformity *within* our circuit, but given the unanimous views of the eight circuits to have addressed the issue, *see supra* p. 5, it does so throughout the country. "Deciding a case contrary to a unanimous consensus among the circuits is heady business," *United States v. Jones*, 973 F.2d 928, 940 (D.C. Cir. 1992) (Mikva, C.J., concurring in part), especially where, as here, the Supreme Court has stressed the need for certainty and uniformity.

GWU insists that we and our sister circuits are all wrong. Instead of looking at the most analogous state law, it argues, we have all sought out the most analogous federal law for comparison. Rather than this "federal-to-federal-to-state chain

of analogies," Appellee's Br. 26, GWU argues that we should evaluate the similarities between Title VI and the DCHRA. GWU fundamentally misunderstands what we and our sister circuits are doing. We are not rifling through federal causes of action to see which one most closely resembles Title VI. Instead, we are applying *Wilson*, *Goodman*, and *Owens* to answer a federal question of statutory construction. The answer is unmistakable: the "most analogous" statute of limitations for Title VI is the three-year residual limitations period for unspecified personal injuries.

### III.

GWU urges us to affirm on alternative grounds, namely that summary judgment is warranted even under the three-year limitations period. But as the district court persuasively demonstrated, the record reveals a genuine dispute of material fact that precludes granting summary judgment. *See* Fed. R. Civ. P. 56(c). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*