# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 5, 2009        Decided January 5, 2010

No. 09-7013

TRINA STEWART,
APPELLANT

v.

ST. ELIZABETHS HOSPITAL AND DISTRICT OF COLUMBIA
DEPARTMENT OF MENTAL HEALTH,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01444)

*Lisa Alexis Jones* argued the cause and filed the briefs for appellant.

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General of the District of Columbia, were with her on the briefs.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Trina Stewart worked for about 20 years as a housekeeping aide at St. Elizabeths[*] Hospital in Washington, D.C. In January 2002, St. Elizabeths transferred Stewart to a part of the hospital known as the John Howard Pavilion, a maximum-security facility that houses mentally ill patients who have been charged with or convicted of crimes. Stewart alleges that the stress of working there caused her mental health to deteriorate to the point that she became disabled for purposes of the Rehabilitation Act. Stewart contends, moreover, that St. Elizabeths failed to accommodate her disability by refusing her request for a transfer to a job site outside the John Howard Pavilion. Stewart's claim fails, however, because her superiors did not have notice of any mental disability or requested accommodation until October 2002, at which time they acted promptly and appropriately to assist her. We therefore affirm.

I

Trina Stewart worked as a housekeeping aide at St. Elizabeths Hospital. In January 2002, St. Elizabeths assigned Stewart to work at its John Howard Pavilion. The John Howard Pavilion is a maximum-security facility that houses pretrial defendants awaiting psychiatric screening, convicted persons who become mentally ill while incarcerated, and persons found not guilty by reason of insanity.

---

[*] St. Elizabeths Hospital does not have an apostrophe before the "s."

Stewart did not want to work at the John Howard Pavilion and complained to both the Director of Housekeeping and her former supervisor about her new assignment. She did not base her objection on any claimed disability.

A few months after her transfer to the John Howard Pavilion, a patient exposed himself to Stewart. After the incident, Stewart says she became fearful and panicky and that her "heart would race each day working in that very restrictive place" with dangerous criminals. J.A. 149.

In a separate later incident, one of Stewart's supervisors found her "crying, shaking, [and] talking to herself." *Id*. at 146. Stewart explained to her supervisors that she was upset because other employees were spreading personal rumors about her. After this incident, Stewart's supervisors became concerned about her, but they attributed her behavior in part to stress as a result of the 2002 deaths of her uncle and sister.

In early October 2002, Stewart called the hospital's Facility Administrator, Jasper Burnett, to request a transfer from the John Howard Pavilion because she didn't "feel that well." *Id*. at 269. Burnett made an appointment to meet with Stewart on October 15th and, pursuant to federal regulations, asked her to provide medical documentation of any disability. Between the call and the appointment, Stewart provided Burnett's secretary with an incident report regarding the patient who had exposed himself to her. She did not provide medical documentation of any disability. At the October 15th meeting, Stewart informed Burnett about the distress she was experiencing and requested a transfer from the John Howard Pavilion. Burnett told her that he would help her once she completed the requisite paperwork. That afternoon, Stewart

left work early and attempted suicide. She never returned to work at St. Elizabeths.

Stewart later brought suit against St. Elizabeths for failure to accommodate her disability under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. With respect to Stewart's claim that the hospital had failed to accommodate her disability before October 2002, the District Court granted summary judgment to the hospital. The District Court concluded that Stewart had not afforded her superiors notice of her alleged mental disability before October 2002.

With respect to Stewart's claim that Burnett had denied her request for accommodation in October 2002, Stewart's case went to trial. After she had presented her evidence, St. Elizabeths moved for judgment as a matter of law. The District Court granted the motion, holding that Stewart had not presented evidence from which a reasonable jury could conclude that Burnett had denied her request either explicitly or through undue delay.

Stewart appeals from both the grant of summary judgment and the grant of judgment as a matter of law. Our review is *de novo*, and in this posture we view the evidence in the light most favorable to Stewart, the non-moving party in the District Court.

II

The Rehabilitation Act requires federal employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (incorporated into the Rehabilitation Act by 29 U.S.C. § 791(g)). To prevail on a

claim for denial of reasonable accommodation, Stewart had to produce sufficient evidence (a) that she was disabled for purposes of the Rehabilitation Act, 29 U.S.C. § 794; (b) that St. Elizabeths had notice of her disability, *see Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 896-97 (D.C. Cir. 1998); and (c) that St. Elizabeths denied her request for a reasonable accommodation of her disability, *see Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999). Stewart challenges both St. Elizabeths' pre-October 2002 actions and its October 2002 actions. We consider each in turn.

A

With respect to Stewart's claim that she did not receive an accommodation before October 2002, Stewart failed to produce sufficient evidence that she notified St. Elizabeths of her disability, as is required to support a Rehabilitation Act claim.

Stewart did not produce sufficient evidence that she notified St. Elizabeths of her disability before October 2002. Indeed, Stewart acknowledges that she did not inform any of her supervisors of her disability before then. *See* Oral Arg. Tr. at 5. Nor did her supervisors receive constructive notice: Stewart's behavior was not so obviously a manifestation "of an underlying disability that it would be reasonable to infer that an employer actually knew of the disability." *Crandall*, 146 F.3d at 898 (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995)). Although Stewart was visibly upset after a patient exposed himself to her, such a reaction alone was not indicative of mental illness. And after the later incident where she was found crying and shaking, Stewart told her supervisor that her distress stemmed from a personal

matter. J.A. 146. Stewart's supervisors could not be expected to attribute those reactions to a mental illness that qualified as a disability. Indeed, most other signs about Stewart's work and behavior would have led her supervisors to the opposite conclusion: Stewart reasonably explained why she was upset after both incidents, she completed her work assignments in a satisfactory manner, her attendance record was excellent, and she took leave only for typical personal and family issues – car trouble, babysitting difficulties, deaths in her family, her children's illnesses, and her own minor illnesses. Def.'s Statement of Material Facts Not in Dispute ¶¶ 12-13, J.A. 17-18.

In sum, with respect to her claim based on St. Elizabeths' pre-October 2002 actions, Stewart did not produce sufficient evidence that she notified St. Elizabeths of her disability. Therefore, the District Court properly granted summary judgment to St. Elizabeths with respect to St. Elizabeths' pre-October 2002 actions.

B

Stewart separately claims that St. Elizabeths denied her October 2002 request for an accommodation. To create an issue for the jury with respect to this request, Stewart was required to produce sufficient evidence that, after her request, St. Elizabeths refused to make an accommodation. *See Mitchell*, 190 F.3d at 6; *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002).

As the District Court correctly concluded, a reasonable jury could not have found that St. Elizabeths – in particular, Facility Administrator Jasper Burnett – denied Stewart's request for an accommodation. Burnett met promptly with

Stewart after she asked him to do so. At their meeting, Burnett did not deny an accommodation to Stewart. On the contrary, Burnett said he would try to assist Stewart as soon as she submitted the necessary paperwork. Nothing in the evidence presented suggests that Burnett acted in anything but an entirely appropriate manner in dealing with Stewart's situation. *See* 29 C.F.R. pt. 1630 app. § 1630.9 ("When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation."); *cf. Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1136 (7th Cir. 1996) (when the parties are "missing information . . . that can only be provided by one of the parties, . . . the party withholding the information may be found to have obstructed the process"); *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (when employee fails to provide medical information, claim for denial of accommodation cannot go forward).

\* \* \*

We affirm the District Court's summary judgment and judgment as a matter of law in favor of St. Elizabeths Hospital.

*So ordered.*