Adesina F. JAIYEOLA, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 10–CV–578.

District of Columbia Court of Appeals.

Argued May 26, 2011.

Decided March 29, 2012.

James C. McKay, Jr., Senior Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

GLICKMAN, Associate Judge:

Adesina Jaiyeola appeals from a grant of summary judgment to the District of Columbia in his employment discrimination case. Mr. Jaiyeola complained that the District of Columbia Public Service Commission ("PSC") violated the federal Rehabilitation Act of 1973 and the District's Human Rights Act by discriminatorily refusing to reinstate him to his job because he was, or was regarded as, physically disabled. In awarding summary judgment to the District, the trial court concluded that appellant's claims were barred by the statute of limitations and, in part, by appellant's failure to give proper notice of his claims to the District as required by D.C.Code § 12–309 (2001). We conclude otherwise and reverse and remand for further proceedings.

I.

Appellant's claims arise from his employment with the PSC as a pipeline safety engineer. In 1998, appellant was in a car accident while on the job and sustained injuries to his neck and back. He continued to work intermittently until December 15, 2000, when, still suffering from neck pain and with his physician recommending surgery, he went on unpaid leave and began receiving temporary total disability benefits.

Neil R. Lebowitz, Columbia, MD, for appellant.

In September 2001, appellant asked to be allowed to return to his job at the PSC. An independent medical examiner evaluated appellant and reported that he could return to work subject to two "permanent" restrictions—that he not lift more than 30 pounds or engage in prolonged neck or back flexion. In light of this report, the PSC denied appellant's request.

Appellant made several further attempts to be reinstated. Between September 2001 and December 2002, he communicated with his former supervisor and the Director of Human Resources for the PSC, but they told him he was too injured to return to work. Beginning in January 2003, appellant presented evidence that his physical condition had improved and that he could return to work with fewer or no restrictions on his activity.[1] The PSC did not respond affirmatively to appellant's submissions.[2] Unable to convince the PSC to allow him to return, appellant resigned in December 2004 to take a position as a pipeline safety engineer with the Maryland Public Safety Commission at a lower salary.[3]

On November 10, 2003 (roughly a year prior to his resignation), appellant filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), in which he charged the PSC with discriminating against him on account of his disability and failing to make reasonable accommodations to enable him to return to work. Pursuant to the EEOC's worksharing agreement with the District of Columbia Office of Human Rights ("OHR"), the complaint was cross-filed with the OHR, but it was investigated by the EEOC. Two years later, on November 29, 2005, the Department of Justice provided appellant with a right-to-sue notice.[4] Appellant filed suit in the Superior Court on February 2, 2006. As subsequently amended,[5] his complaint charged the PSC with having discrimi-

---

1. Notably, on January 17, 2003, appellant's personal physician furnished a work release stating that appellant was ready to resume his job as a pipeline safety engineer, subject only to the one restriction that he not lift more than 30 pounds. In late March 2003, at the PSC's request, appellant provided a medical affidavit from a second physician releasing him to return to work without restrictions (along with a second affidavit from his personal physician stating that appellant could complete all tasks associated with his job except for the occasional lifting of a 100–pound master meter). Finally, in January 2004, appellant's personal physician opined in a letter to the PSC that appellant was "able to function to normal levels" and was "now released to go back [to work] full time, in full capacity without restriction." In addition, on several occasions in 2003, appellant's vocational counselor wrote to the PSC to offer her services to assist with his return to work.

2. In July 2004, the PSC sent appellant a letter asking him to provide yet another medical affidavit to enable the Commission to assess his fitness for duty. The record before us does not indicate whether or how appellant responded to this request.

3. Appellant takes the position that his resignation constituted a constructive termination.

4. The notice stated that appellant's charge of discrimination had been referred to the Department of Justice; that the Department had decided not to file suit on the charge; that the EEOC's effort at conciliation had been unsuccessful; and that appellant had the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990 and under Title VII of the Civil Rights Act of 1964 within 90 days.

5. In his initial complaint, appellant named the PSC as the sole defendant. The PSC moved to dismiss the complaint on the ground that it is a *non sui juris* entity, and this motion was granted. Appellant successfully moved to vacate the dismissal and amended his complaint to substitute (or add) the District as a defendant. (The parties disagree as to whether the PSC is still a co-defendant in the case, but we need not resolve that issue here.)

nated against him on the basis of his actual or perceived disability, in violation of the District's Human Rights Act ("HRA")[6] and Section 504 of the federal Rehabilitation Act of 1973.[7]

The District eventually moved for summary judgment on the grounds that appellant's claims were time-barred under the relevant statutes of limitations; that his claims under the HRA for unliquidated damages also were barred by his failure to give proper notice under D.C.Code § 12–309; and that appellant could not establish a *prima facie* case of unlawful discrimination under either the HRA or the Rehabilitation Act because he could not show that he was disabled or regarded as being disabled within the meaning of those laws. The trial court awarded the District summary judgment on the first two grounds and found it unnecessary to decide whether appellant could establish a *prima facie* case of disability discrimination. This appeal followed.

## II.

■ Appellant argues that the District waived its objections under applicable statutes of limitations and § 12–309 by failing to assert them as affirmative defenses in its answer to his amended com-

plaint. Appellant further contends that his claims are not time-barred, and that his failure to comply with the notice requirements of § 12–309 does not prevent him from presenting his claims under the HRA for liquidated damages, or from suing the PSC (as distinct from the District of Columbia). The District largely (though not entirely) disagrees with these contentions. In addition, the District argues that we should affirm the judgment in its favor because appellant cannot establish that he was disabled or regarded as disabled, even though the trial court did not rely on that ground. Appellant rejoins that this latter issue is not ripe for our consideration because he had not completed necessary discovery, but that even in its present, incomplete state, the record does not support the District's position. We review the trial court's rejection of appellant's waiver claim for abuse of discretion[8]; our review of the other arguments presented to us is *de novo*.[9]

## A. Waiver of Affirmative Defenses

■ Because § 12–309 and statutes of limitations provide affirmative defenses, Civil Rule 8(c) requires them to be "set forth affirmatively" in the answer to the complaint,[10] and they "may be waived if not promptly pleaded."[11] The District ran

---

6. D.C.Code § 2–1401.01 *et seq.* (2001).

7. 29 U.S.C. § 794 (2006).

8. *See Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 526 (D.C.2003).

9. We review the grant of a motion for summary judgment *de novo*. In reviewing a trial court order granting summary judgment, we conduct an independent review of the record, and our standard of review is the same as the trial court's standard in considering the motion for summary judgment. A motion for summary judgment should be granted whenever the court concludes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Though we view the evidence in the light most favorable to the non-moving party, mere conclusory allegations by the non-moving party are legally insufficient to avoid the entry of summary judgment. Thus, a party opposing a motion for summary judgment must produce at least enough evidence to make out a prima facie case in support of his position.

*Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1281–82 (D.C.2002) (citations omitted).

10. Super. Ct. Civ. R. 8(c).

11. *Feldman v. Gogos*, 628 A.2d 103, 104 (D.C. 1993) (internal quotation marks omitted).

the risk of waiver in this case, as it neglected to assert either defense in its answer to the amended complaint and waited two years before raising the defenses for the first time in its summary judgment motion. Nonetheless, we cannot find that the trial court abused its discretion in rejecting appellant's waiver claim. We have held that, absent unfair surprise or other substantial prejudice to the plaintiff, or interference with the administration of justice, a defendant may raise an affirmative defense in a pre-trial motion despite having neglected to assert it in answer to the complaint.[12] Appellant "had and exercised a full and fair opportunity"[13] to respond to the District's tardy invocation of the statutes of limitations and § 12–309, and he has not shown that he was unfairly disadvantaged in any other respect. We conclude that "[t]here was no prejudice and hence no waiver."[14]

## B. The Statute of Limitations Governing Rehabilitation Act Claims

 As pertinent here, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance."[15] The Rehabilitation Act does not have its own statute of limitations, so courts must look elsewhere for the limitations period that

**12.** *See Whitener v. Wash. Metro. Area Transit Auth.*, 505 A.2d 457, 460 (D.C.1986) ("We hold ... that when there is no substantial prejudice to the plaintiff, a defendant is not barred by Rule 8(c) from raising the statute of limitations in a pre-trial motion, even though the statute has not been raised in the defendant's answer to the complaint."); *see also Fed. Mktg.*, 823 A.2d at 526 (no waiver of laches defense occasioned by failure to raise it in answer: "While a party's failure to plead an affirmative defense as directed by Rule 8([c]) may result in a waiver, the principle is read in light of Rule 15(a) (leave to amend shall be freely given when justice so requires), and is subject to other discretionary exceptions such as where the party raises the defense by pretrial motion in a manner that does not occasion unfair surprise or impede the due administration of justice.") (citation omitted).

**13.** *Fed. Mktg.*, 823 A.2d at 526.

**14.** *Id.; see also Owens v. District of Columbia*, 993 A.2d 1085, 1090 n. 5 (D.C.2010) (rejecting argument that District waived its § 12–309 defense by failing to assert it earlier: "Although the District certainly could have saved the court and the parties a lot of time and resources by raising this defense sooner, Ms. Owens suffered no legal prejudice from the District's delay: Ms. Owens missed the deadline for complying with § 12–309 long before she filed this complaint.").

Because it is not necessary to find a waiver in this case, we need not decide whether § 12–309's notice requirement is jurisdictional and therefore unwaivable. *Compare Giardino v. District of Columbia*, 252 F.R.D. 18, 24 (D.D.C.2008) (declining to resolve whether § 12–309 is jurisdictional and/or waivable, because failure to timely raise the defense did not result in prejudice), *with Sperling ex rel. Estate of Oxlaj–Gonzales v. Wash. Metro. Area Transit Auth.*, 542 F.Supp.2d 76, 81 (D.D.C. 2008) (accepting parties' consensus that § 12–309 "would operate as a jurisdictional bar to Plaintiff's claim against the District if notice is found insufficient"); *see also District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C.1995) (stating that compliance with § 12–309 is a "mandatory ... prerequisite to filing suit against the District"); *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C.1981) ("[U]nless timely notice is given, no 'right of action' or 'entitlement to maintain an action' accrues.").

**15.** 29 U.S.C. § 794(a). The term "program or activity" includes a department, agency, or other instrumentality of a state or a local government. *Id.* § 794(b)(1). An instrumentality of the District of Columbia is subject to § 794. *See Stewart v. District of Columbia*, No. 04–1444, 2006 WL 626921, at *8, 2006 U.S. Dist. LEXIS 12991, at *25 (D.D.C. Mar. 12, 2006), *aff'd sub nom. Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305 (D.C.Cir.2010).

applies to it. When the District moved for summary judgment, it argued that § 504 claims are subject to the federal statute of limitations that governs claims under Title I of the Americans with Disabilities Act ("ADA"), namely, § 706 of Title VII of the Civil Rights Act of 1964.[16] Because appellant's EEOC complaint was cross-filed with the OHR, § 706 of Title VII would dictate a limitations period of 300 days.[17] The trial court agreed with the District and applied the ADA/Title VII limitations period to appellant's Rehabilitation Act claim. However, the District now concedes,[18] and we agree, that it erred in urging the trial court to look to the ADA for the applicable statute of limitations.

■ Although § 504 of the Rehabilitation Act adopts the applicable standards of liability set forth in the ADA,[19] § 505 specifies (in pertinent part) that "[t]he remedies, procedures, and rights set forth in *title VI* of the Civil Rights Act of 1964 ... shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under [§ 504 of the Rehabilitation Act]."[20] The Rehabilitation Act thus directs us to look first to the provisions of Title VI for the limitations period that governs claims under § 504.[21] Unfortunately, however, Title VI does not

**16.** *See* 42 U.S.C. § 12117(a) (2006) (explicitly incorporating the "powers, remedies, and procedures" of Title VII for ADA employment discrimination claims).

**17.** Normally, the Title VII limitations period is 180 days, but when a plaintiff initially institutes proceedings with a "State or local agency [such as the OHR] with authority to grant or seek relief from such [discriminatory] practice or to institute criminal proceedings with respect thereto," the limitations period is extended to "three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier." 42 U.S.C. § 2000e–5 (e)(1) (2006).

**18.** Brief for Appellee at 22 n. 6.

**19.** 29 U.S.C. § 794(d) (2006) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment."). We agree with those courts that have held that the ADA "standards" that § 794 incorporates "include only standards of liability." *Adams v. District of Columbia*, 740

F.Supp.2d 173, 182 (D.D.C.2010). Similarly, 42 U.S.C. § 12117(b), a provision of the ADA, instructs government agencies to ensure that administrative complaints filed under the ADA and the Rehabilitation Act "are dealt with in a manner that avoids duplication of effort and prevents imposition of inconsistent or conflicting standards for the same requirements." This provision was enacted to forestall the promulgation of contradictory administrative regulations. *See, e.g., Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1178 (9th Cir.1999) ("Congress was aware of the problem that conflicting regulations could create."); *Valentine v. Standard & Poor's*, 50 F.Supp.2d 262, 287 n. 15 (S.D.N.Y.1999). The statute cannot be read to imply the application of identical statutes of limitations to civil actions under the two Acts.

**20.** 29 U.S.C. § 794a (a)(2) (2006) (emphasis added). Title VI prohibits discrimination on the basis of race, color, or national origin in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (2006).

**21.** *See Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982 (5th Cir.1992); *accord Adams*, 740 F.Supp.2d at 182 (agreeing with other courts that " § 794 of the Rehabilitation Act incorporates Title VI's 'remedies, procedures, and rights,' including its statute of limitations").

have its own statute of limitations either.[22] Furthermore, the general federal statute of limitations, 28 U.S.C. § 1658 (2006), does not apply to the Rehabilitation Act because it only governs actions arising under statutes passed after December 1, 1990.[23]

"When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."[24] Our task, therefore, is to identify the District law "most closely analogous to" § 504 and borrow its limitations period, unless doing so would "stymie the policies underlying the federal cause of action."[25] "[T]he most analogous statute need not be identical" to § 504[26]; federal statutes rarely have a precise mirror image in state law. To select the best fit, we are charged with identifying the "essence" of the claim embodied in the federal act and seeking out a District law that can be boiled down to the same or highly similar ingredients.[27]

Two candidates in the District of Columbia Code present themselves: the three-year statute of limitations for personal injury claims,[28] and the one-year limitations period for complaints of unlawful discrimination under the HRA.[29] A majority of federal courts in other jurisdictions have chosen to apply the forum state's limitations periods for personal injury claims to claims of disability discrimination under § 504 of the Rehabilitation Act.[30] Only rarely, however, has a federal court in these cases considered the option of applying a statute of limitations specific to a state anti-discrimination statute. For the most part, federal district court judges in our jurisdiction also have been drawn to the personal injury statute of limitations for § 504 actions (the D.C. Circuit not having had occasion to weigh in on the question), though it appears they have not considered the HRA statute of limitations

22. *Hickey,* 976 F.2d at 982.

23. *See Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

24. *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *see also N. Star Steel Co. v. Thomas,* 515 U.S. 29, 33–35, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

25. *N. Star Steel Co.,* 515 U.S. at 34, 115 S.Ct. 1927 (internal quotation marks omitted); *see, e.g., McCullough v. Branch Banking & Trust Co.,* 35 F.3d 127, 129 (4th Cir.1994) ("Our first inquiry, therefore, is to determine which North Carolina statute is most analogous to a Rehabilitation Act claim."); *Hickey,* 976 F.2d at 982 ("The district court was required to adopt, from the forum state, the statute of limitations governing the state cause of action most closely analogous to Hickey's Rehabilitation Act claims."); *Morse v. Univ. of Vt.,* 973 F.2d 122, 125 (2d Cir.1992) ("No limitation of time is set forth in the Act for actions brought pursuant to § 504. Accordingly, we are required in determining the applicable limita-

tions period to select the most appropriate or analogous state statute of limitations.") (internal quotation marks omitted); *Adams,* 740 F.Supp.2d at 184 ("Title VI, however, does not have a statute of limitations, and thus this court draws the statute of limitations from an analogous state statute.").

26. *Wolsky v. Med. Coll. of Hampton Rds.,* 1 F.3d 222, 225 (4th Cir.1993).

27. *Wilson,* 471 U.S. at 268, 105 S.Ct. 1938.

28. D.C.Code § 12–301(8) (2001).

29. D.C.Code § 2–1403.16(a) (2001) ("A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof[.]").

30. *See* Scott M. Smith, Annotation, *What statute of limitations applies under § 504 of the Rehabilitation Act of 1973 (29 U.S.C.A. § 794),* 120 A.L.R. FED. 621 (1994) (collecting cases).

as an alternative.[31] The rationale for choosing the limitations period governing personal injury claims is that the Rehabilitation Act is an anti-discrimination statute and, as the courts have recognized in borrowing state statutes of limitations for actions brought under 42 U.S.C. §§ 1981 and 1983 and Title VI of the Civil Rights Act of 1964, "claims for discrimination are essentially claims for personal injury."[32] And even where a state statute affords a specific cause of action for discrimination comparable in scope to that of § 504, the state statute may not have a statute of limitations of its own that could be adopted.[33]

Unlike § 1983, which is "a 'uniquely federal remedy ...' [that] can have no close counterpart in state statutes,"[34] § 504 of the Rehabilitation Act can, and does, have counterparts in some states. A state anti-discrimination statute that furnishes a sufficiently broad cause of action for disability discrimination may be the "most closely analogous" state statute to § 504; the specific cause of action for disability discrimination would be a better fit than the more general personal injury cause of action. In that case, the state anti-discrimination statute's own limitations period would be the appropriate period to borrow for § 504 claims.

The Fourth Circuit considered this possibility in *Wolsky v. Medical College of Hampton Roads*.[35] Finding that "[t]he Virginia Rights of Persons with Disabilities Act was modeled after and is almost identical to the Rehabilitation Act," the Fourth Circuit held that the federal district court should have borrowed the Disabilities Act's one-year statute of limitations for a § 504 claim rather than the longer personal injury statute of limitations.[36] The appeals court was not deterred by the fact that the Disabilities Act was "not an exact counterpart" to the Rehabilitation Act because, the court explained, "minor differences between state and federal statutes are acceptable and the most analogous statute need not be identical."[37]

The Fourth Circuit followed *Wolsky* in *McCullough v. Branch Banking & Trust*

---

31. *See, e.g., Adams*, 740 F.Supp.2d at 184; *Gordon v. District of Columbia*, 605 F.Supp.2d 239, 245 (D.D.C.2009); *Stewart v. District of Columbia*, No. 04–1444, 2006 WL 626921, at *11, 2006 U.S. Dist. LEXIS 12991, at *33 (D.D.C. Mar. 12, 2006), *aff'd sub nom. Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305 (D.C.Cir.2010).

32. *Hickey*, 976 F.2d at 983. The Supreme Court held in *Wilson*, 471 U.S. at 276–78, 105 S.Ct. 1938 and *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), that actions under 42 U.S.C. §§ 1983 and 1981 are best characterized as personal injury actions for purposes of choosing applicable state statutes of limitations. Following those decisions, federal courts generally apply state personal injury statutes of limitations to Title VI claims as well. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999); *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir.1996); *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711–12 (9th Cir.1993).

33. Thus, in *Hickey*, the Fifth Circuit decided that Rehabilitation Act claims are subject to Texas's limitations period for personal injury claims only after finding that "[t]he Texas statute which prohibits discrimination against handicapped persons and creates a civil cause of action for the redress of such discrimination does not contain a limitations period." 976 F.2d at 982 n. 3.

34. *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 253 (6th Cir.1994) (quoting *Wilson*, 471 U.S. at 271–72, 105 S.Ct. 1938).

35. 1 F.3d 222 (4th Cir.1993).

36. *Id.* at 224, 225; *accord J.S. v. Isle of Wight Cnty. Sch. Bd.*, 402 F.3d 468, 475 (4th Cir. 2005).

37. *Wolsky*, 1 F.3d at 225 (citing *Wilson*, 471 U.S. at 272, 105 S.Ct. 1938).

*Company*,[38] affirming a decision to apply the 180–day statute of limitations in the North Carolina Handicapped Persons Protection Act to a claim under § 504 of the Rehabilitation Act rather than the three-year limitations period under the state's personal injury statute. The Handicapped Persons Protection Act prohibited discrimination on the basis of disability in employment, public accommodations, service, and transportation; although its language did "not correspond to the Rehabilitation Act as precisely as the language of the Virginia Act, the North Carolina Act provide[d] similar protections to disabled individuals."[39] The court of appeals concluded that the Handicapped Persons Protection Act was more analogous to the Rehabilitation Act than other state laws, even though it was not a "perfect counterpart" because, among other things, it did not allow a jury trial or provide for full compensatory and punitive damages.[40] In addition, the court held, "application of the 180–day statute of limitations is not inconsistent with the federal policies behind the Rehabilitation Act."[41] "[A] short statute of limitations is not uncommon among federal civil rights statutes," the court explained (notably, both Title VII of the Civil Rights Act and the ADA have 180–day time bars), "and it serves the goals of prompt notification ... and swift resolution of the conflict."[42] Moreover, the court reasoned, the federal policies behind the ADA and the Rehabilitation Act are similar, and it is "unlikely that Congress, while enacting a 180–day time-bar for an ADA claim, would not ap-

prove of the same limitations period under the Rehabilitation Act."[43]

The District of Columbia does not have a statute modeled on the Rehabilitation Act. But in lieu of such a narrowly focused statute, the District has the HRA, which expressly does prohibit discrimination based, *inter alia*, on disability.[44] We must decide whether the HRA is sufficiently similar to § 504 of the Rehabilitation Act that we should borrow the HRA statute of limitations rather than the default choice of the limitations period for personal injury claims.

There are some substantive differences between the two Acts. Most obviously, while § 504 deals exclusively with disability-related discrimination, the HRA also prohibits discrimination based on a number of other characteristics, including race, national origin, gender, and sexual orientation.[45] And while § 504 applies only to programs or activities (whether governmental or private) that receive federal assistance (or that are conducted by an Executive agency or by the United States Postal Service),[46] the HRA, with limited exceptions, applies broadly to proscribe discrimination in employment, membership in labor unions, housing and real estate transactions, public accommodations, and educational institutions, as well as in and by the District of Columbia Government itself.[47]

In our view, these differences pale in comparison to the similarities between

---

**38.** 35 F.3d 127 (4th Cir.1994).

**39.** *Id.* at 130.

**40.** *Id.* at 132.

**41.** *Id.* at 131.

**42.** *Id.*

**43.** *Id.*

**44.** *See* D.C.Code § 2–1401.01 (2007 Repl.); *see also id.* §§ 2–1402.11(a); 2–1402.21(a); 2–1402.31(a); 2–1402.41(1); 2–1402.73.

**45.** *See id.* § 2–1401.01.

**46.** *See* 29 U.S.C. § 794(a), (b).

**47.** D.C.Code § 2–1402.01 *et seq.* (2001).

the HRA and § 504. The similarities start with their shared purpose and ambitious aims: Just as the Rehabilitation Act seeks to "empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society," [48] the HRA aims to "secure an end in the District of Columbia to discrimination for any reason other than that of individual merit." [49] To accomplish those ends, both statutes create private causes of action for individuals who have been victimized by disability discrimination.[50] In doing so, both statutes employ substantially the same definition of the term "disability." [51] And the remedies available to prevailing plaintiffs under the HRA include compensatory damages and equitable relief and appear to be no less broad than the range of remedies available under § 504 of the Rehabilitation Act.[52]

There is not a perfect match, but these core similarities outweigh the differences in determining which statute of limitations to borrow for claims of disability discrimination under the Rehabilitation Act. Personal injury claims need not—and, indeed, typically do not—seek to remedy discrimination at all, and the three-year statute of limitations for such claims certainly was not chosen with discrimination claims in mind. In contrast, the HRA targets virtually all forms of disability discrimination,

**48.** 29 U.S.C. § 701(b)(1) (2006).

**49.** D.C.Code § 2–1401.01.

**50.** *See Barnes v. Gorman,* 536 U.S. 181, 184–85, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) ("Section 202 of the ADA prohibits discrimination against the disabled by public entities; § 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding, including private organizations, 29 U.S.C. § 794(b)(3). Both provisions are enforceable through private causes of action."); D.C.Code § 2–1403.16(a). Plaintiffs filing HRA claims typically have to make an "election of remedies." *Griffin v. Acacia Life Ins. Co.,* 925 A.2d 564, 572 (D.C.2007). The choice is between filing an administrative complaint with the OHR and a private cause of action in a court of competent jurisdiction.

**51.** Both statutes draw their definitions of "disability" from the ADA. Prior to 2009, "disability" as used in the ADA meant "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the disabled] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006). This definition was incorporated virtually verbatim in the Rehabilitation Act, *see* 29 U.S.C. § 705(9)(B), (20)(B) (2006), and the HRA, *see* D.C.Code § 2–1401.02(5A).

The ADA Amendments Act of 2008 ("ADAA") amended the definition of "disabili-ty" in the ADA to provide that "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*" 42 U.S.C.A. § 12102(3)(A) (West 2012) (emphasis added). At the same time, the ADAA amended 29 U.S.C. § 705 to state that the Rehabilitation Act incorporates the ADA's expanded definition of "disability" by reference. *See* 29 U.S.C.A. § 705(9)(B), (20)(B) (West 2012). These amendments took effect on January 1, 2009, and were not retroactive. *See, e.g., Lytes v. D.C. Water and Sewer Auth.,* 572 F.3d 936, 940 (D.C.Cir.2009). Hence they do not apply to the present case.

**52.** *See* D.C.Code § 2–1403.16(b) ("The court may grant any relief it deems appropriate, including, the [equitable] relief provided in [D.C.Code] §§ 2–1403.07 and 2–1403.13(a))"; 29 U.S.C. § 794a (a)(2); *Barnes,* 536 U.S. at 185, 122 S.Ct. 2097 ("[T]he remedies for violations of ... § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* which prohibits racial discrimination in federally funded programs and activities."); 9 Lex K. Larson, Larson on Employment Discrimination § 163.10 (2d ed.) (both equitable relief and compensatory damages may be awarded under § 504).

encompasses the range of activities covered by the Rehabilitation Act, and has a statute of limitations intended specifically for claims of discrimination. It is no objection that the HRA has broader coverage of discrimination than § 504 has.[53] Given the reality that perfect fits are rare, it is preferable that the state statute be overinclusive as opposed to underinclusive when lined up against the federal act in need of a borrowed statute of limitations. Significant underinclusiveness is problematic because a state statute is unlikely to be a good analogue if it is substantively lacking in a number of the causes of action encapsulated in the federal act in need.[54] But we do not perceive underinclusiveness to be a problem here. While there are claims that can be brought under the HRA but not under § 504—for instance, claims for racial discrimination, or claims for disability discrimination in activities that are not federally funded—it strains the imagination to think of instances in which the reverse is true.

In sum, a Rehabilitation Act claim is far more similar to an HRA claim than it is to an ordinary personal injury claim, and the HRA must be deemed the District statute most analogous to § 504. Having reached that conclusion, we must determine whether borrowing the HRA's one-year statute of limitations would be inconsistent with § 504 or the policies underlying it. It would not be. Although the HRA limitations period is shorter than the limitations period for personal injury claims, a short limitation period is by no means anomalous for a federal anti-discrimination claim [55]; and a "state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation." [56] Thus, we hold that the HRA's one-year statute of limitations governs § 504 claims in this jurisdiction.

As a rule, when a court borrows a state limitations period for a federal cause of action, the court also must apply the state's rules for tolling the statute of limitations.[57] The rationale for doing so is that "[i]n virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue." [58] This

---

**53.** *Cf. Vaughn v. Nw. Airlines, Inc.*, 558 N.W.2d 736, 739 (Minn.1997) (borrowing the limitations period from the Minnesota Human Rights Act for claims of disability discrimination under § 1374(c) of the federal Air Carriers Access Act because, "[a]lthough broader in scope, the MHRA sets out a cause of action for disability discrimination nearly identical to § 1374(c) of the ACAA").

**54.** *See, e.g., Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 255 (6th Cir.1994) (declining to borrow statute of limitations in Kentucky Equal Opportunities Act for action under § 504 of the Rehabilitation Act, because "[t]he Kentucky act only prohibits discriminatory employment practices, whereas the Rehabilitation Act is much broader").

**55.** *See McCullough*, 35 F.3d at 131.

**56.** *See Robertson v. Wegmann*, 436 U.S. 584, 593, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978).

**57.** *See Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) (holding that a federal court applying a state statute of limitations to a prisoner's federal civil rights action should also apply the state statute tolling the limitation period for prisoners); *see also Bd. of Regents, Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 485–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–65, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *J.S. v. Isle of Wight Cnty. Sch. Bd.*, 402 F.3d 468, 477 (4th Cir.2005).

**58.** *Hardin*, 490 U.S. at 539, 109 S.Ct. 1998 (internal quotation marks and citation omitted).

rule and its rationale apply here. The HRA statute of limitations provides that "[t]he timely filing of a complaint with the Office [of Human Rights] ... shall toll the running of the statute of limitations while the complaint is pending." [59] We have held that this tolling provision is triggered by the timely filing of a complaint with the EEOC, where the complaint is cross-filed with the OHR pursuant to the worksharing agreement between the two agencies.[60] The running of the statute of limitations resumes, in such a situation, when the EEOC (or the Department of Justice, if the case was referred to it by the EEOC for possible prosecution) issues a right-to-sue letter.[61]

## C. Timeliness of the Complaint

The same statute of limitations and tolling provision apply to all of appellant's causes of action, as they are brought under either the Rehabilitation Act or the HRA. The one-year statute was tolled while ap-

pellant's administrative complaint was pending with the EEOC or the Department of Justice, i.e., between November 10, 2003, and November 29, 2005. Appellant filed his Superior Court complaint 65 days after the tolling period ended, on February 2, 2006. Consequently, the limitations period for his HRA and Rehabilitation Act claims extends back 300 days (i.e., one year less 65 days) before November 10, 2003, or to January 14, 2003.

In holding appellant's complaint untimely, the trial court reasoned that any discrimination against appellant on the basis of his actual or perceived disability occurred in September 2001, when the PSC first denied appellant's request to be reinstated. That was well outside the limitations period. The court discounted the significance of appellant's subsequent unsuccessful requests for reinstatement, some of which were within the limitations period, on the ground that "[m]ere requests to reconsider ... cannot extend the limitations periods applicable to the civil

59. D.C.Code § 2–1403.16(a). In *Adams v. District of Columbia*, 740 F.Supp.2d 173, 183 (D.D.C.2010), the district court held that this tolling provision in the HRA does not apply to Rehabilitation Act claims, but that was on the assumption (with which we disagree) that the HRA statute of limitations does not apply to such claims. *See id.* at 184 (borrowing District's three-year personal injury statute of limitations).

60. *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 885–86 (D.C.2008); *see also Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 572–74 (D.C.2007) (explaining worksharing agreement between EEOC and OHR and holding that "when the OHR invokes the automatic termination provision of the worksharing agreement for complaints filed originally with the EEOC, that ruling constitutes a dismissal on the ground of administrative convenience under the statute [D.C.Code § 2–1403.16(a)], leaving the complainant free to pursue her cause of action in the Superior Court").

61. *See Estenos*, 952 A.2d at 886 n. 4 (statute of limitations tolls so long as complaint is pending before the EEOC, even if it is not pending before OHR); *Ware v. Nicklin Assocs., Inc.*, 580 F.Supp.2d 158, 164 (D.D.C. 2008) ("[P]ursuant to the work-share agreement between the EEOC and DC OHR, the issuance of a Right to Sue letter by the EEOC afforded the plaintiff the right to pursue her claims under both Title VII and the DCHRA."); *see also Ibrahim v. Unisys Corp.*, 582 F.Supp.2d 41, 45–46 (D.D.C.2008) (including time between notice of right to sue and filing of complaint in court within period during which HRA statute of limitations was *not* tolled); *Ellis v. Georgetown Univ. Hosp.*, 631 F.Supp.2d 71, 78 (D.D.C.2009) ("[Plaintiff's] charge was pending with the EEOC—and the DCHRA statute of limitations was tolled by virtue of the cross-filing of a claim with the DCOHR—until April 4, 2008 when the EEOC issued a Right to Sue Letter.").

rights laws." [62]

■ On appeal, the District does not defend the trial court's ruling on this score. Appellant's interactions with the PSC subsequent to January 14, 2003, constituted more than "[m]ere requests to reconsider." When an employee, whose employer has denied his initial request for a disability accommodation, makes a subsequent request for "a new accommodation" (or for reinstatement without previously requested accommodation on the ground that he is impaired no longer), the denial of that new request can give rise to a fresh act of discrimination, because "the denial of a new request, *made in light of changed circumstances,* [will] not be time-barred." [63] As described above, appellant presented evidence that within the limitations period, beginning in January and March 2003, he supported his renewed requests for reinstatement with medical reports informing the PSC that his condition had improved and that the restrictions on his ability to perform his job therefore were relaxed or eliminated. In other words, there is evidence that appellant sought reinstatement in 2003 "in the light of changed circumstances." Appellant therefore is permitted to argue that the PSC's failure to reinstate him despite those changed circumstances amounted to fresh acts of disability discrimination that are not time-barred.

### D. The Failure to Give Notice Under D.C. Code § 12–309

■ Section 12–309 prohibits a claimant from maintaining an action against the District for unliquidated damages if the claimant has failed to provide the District with written notice "of the approximate time, place, cause, and circumstances of the injury or damage" within six months after it was sustained. This notice requirement applies to appellant's claims under the HRA.[64] It does not apply to his claims under the Rehabilitation Act.[65]

■ Appellant's conceded failure to comply with § 12–309 bars him from seeking unliquidated damages against the District under the HRA.[66] The trial court

---

62. *Del. State Coll. v. Ricks,* 449 U.S. 250, 261 n. 15, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

63. *Barrett v. Covington & Burling LLP,* 979 A.2d 1239, 1249, 1250 (D.C.2009) (emphasis added).

64. *Owens v. District of Columbia,* 993 A.2d 1085, 1089 (D.C.2010).

65. *Candido v. District of Columbia,* 242 F.R.D. 151, 158–59 (D.D.C.2007) ("[S]tate notice-of-claim statutes like D.C. Code § 12–309 are not a bar to federal claims.") (citing cases). "Section 12–309 is not, and does not function as, a statute of limitations," *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995), and notice-of-claim statutes such as § 12–309 are not borrowed and applied to federal causes of action. *See Felder v. Casey,* 487 U.S. 131, 140, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (agreeing with the "near-unanimous conclusion of the federal courts" that "unlike the lack of statutes of limitations in the federal civil rights laws, the absence of any notice-of-claim provision is not a deficiency requiring the importation of such statutes into the federal civil rights scheme"); *Brown v. United States,* 742 F.2d 1498, 1509–10 (D.C.Cir.1984) (en banc) (holding that noncompliance with § 12–309 does not bar prisoner's constitutional tort claim against the District of Columbia); *J.S. v. Isle of Wight Cnty. Sch. Bd.,* 402 F.3d at 477–78 (holding Virginia notice-of-claim requirement inapplicable to claim under § 504 of the Rehabilitation Act).

66. There is no merit to appellant's argument that § 12–309's notice requirements do not apply in this case because he named the PSC as a defendant. Although the PSC is authorized to enforce its orders in court, *see* D.C. Code § 34–803 (2010 Repl.); *Wash. Gas Light Co. v. Public Serv. Comm'n,* 982 A.2d 691 (D.C.2009) (construing D.C. Code § 34–706(a) (2010 Repl.)), Congress has not created the PSC as an entity separate and apart from the District of Columbia Government or given

correctly so held. Thus, appellant is not entitled to seek damages for pain and suffering (which he requested in his complaint) as part of his HRA claims. But "§ 12–309 applies only to unliquidated damage claims," [67] and appellant argues that the statute therefore does not prevent him from seeking back pay and attorney's fees. We agree.

 "A debt is liquidated if at the time it arose, it was an easily ascertainable sum certain." [68] We and other courts have recognized that a claim for back pay ordinarily is a claim for a liquidated debt. [69] No facts have come to our attention that would necessitate treating appellant's back pay claim otherwise. The fact that the District might be entitled to a setoff for the wages that appellant earned after he was hired by the Maryland Public Safety

Commission does not convert his claim into one for an unliquidated debt. [70] Furthermore, we agree with those courts that have held a prevailing plaintiff's request for attorney's fees to be "outside the ambit of unliquidated damages" for purposes of § 12–309 because attorney's fees incurred to litigate a claim generally are not considered to constitute damages at all. [71]

## E. Establishment of a Prima Facie Case

 The District argues that we should affirm the award of summary judgment on a ground the trial court did not reach: namely, that appellant could not establish a *prima facie* case that he was disabled or that the PSC regarded him as being disabled. [72] Appellant counters that

the PSC the general power to sue or be sued in its own name. The notice-of-claim requirements of § 12–309 therefore apply in this action. *See Simmons v. D.C. Armory Bd.,* 656 A.2d 1155, 1156 (D.C.1995) ("Failure to notify the Mayor within six months of the injury will result in dismissal of the suit unless the entity being sued has been authorized by Congress to be sued."); *cf. Dingwall v. D.C. Water and Sewer Auth.,* 766 A.2d 974 (D.C. 2001), *vacated,* 773 A.2d 423 (D.C.2001), *reinstated,* 800 A.2d 686 (D.C.2002) (holding that pre-suit notice requirement is inapplicable to suit against Water and Sewer Authority because it is a separate corporate entity that is amenable to suit in its own name).

**67.** *Snowder v. District of Columbia,* 949 A.2d 590, 600 (D.C.2008).

**68.** *District of Columbia v. Campbell,* 580 A.2d 1295, 1300 (D.C.1990) (internal quotation marks omitted).

**69.** *See Beeton v. District of Columbia,* 779 A.2d 918, 925 (D.C.2001) (affirming trial court award of back pay and benefits as liquidated damages in wrongful termination action despite plaintiff's failure to provide notice required by § 12–309); *see also, e.g., Blocker–Burnette v. District of Columbia,* 730 F.Supp.2d 200, 204–05 (D.C.2010) ("In

general, back pay awards are easily ascertainable and therefore qualify as liquidated damages.") (citing cases).

**70.** *Cf. District Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 732 (D.C.2003) (explaining that a liquidated claim is not converted into an unliquidated one by the fact that the plaintiff's recovery may be reduced by an unliquidated amount the plaintiff owes the defendant).

**71.** *Lindsey v. District of Columbia,* 810 F.Supp.2d 189, 202 (D.D.C.2011); *accord Blocker–Burnette,* 730 F.Supp.2d at 205; *Elzeneiny v. District of Columbia,* 699 F.Supp.2d 31, 35 (D.D.C.2010); *Caudle v. District of Columbia,* No. 08–205, 2008 WL 3523153, *3–4, 2008 U.S. Dist. LEXIS 61660, *10–11 (D.D.C. August 13, 2008).

**72.** To establish that he was disabled or was regarded as being disabled within the meaning of the Rehabilitation Act and the HRA, appellant alleged that he had, or was regarded as having, an impairment that substantially limited one or more of his major life activities. See footnote 51, *supra* (explaining the ADA Amendments Act of 2008 and noting that it was not retroactive). To prove this necessary allegation, it was not enough for appellant merely to show that he was unable (or

this issue was not in a posture to be resolved at the summary judgment stage and is not ripe for our consideration now, because—as he represented to the trial court by Rule 56(f) affidavit[73] in his opposition to the District's motion for summary judgment—the District had not yet complied with court-ordered discovery or produced "key witnesses for deposition," specifically appellant's former supervisor at the PSC and the Rule 30(b)(6)[74] witnesses. Appellant stated that these requested depositions were the subject of pending motions for a protective order (based, in the case of the supervisor, on his alleged ill health). According to appellant, he needed the depositions "in order to fully explore a variety of issues," including, in particular, "whether Defendants 'regarded' him as disabled and whether their refusal to permit his return was motivated by his disability or perceived disability."

Because the trial court awarded summary judgment to the District on the grounds that appellant's claims were time-barred (as well as partly precluded by appellant's failure to give the District proper notice), the court found it unnecessary to consider whether appellant had presented sufficient evidence to establish a *prima facie* case of discrimination on the basis of actual or perceived disability. The court similarly found it unnecessary to consider whether appellant genuinely needed to depose his former supervisor and obtain other discovery in order to address that issue.

 We agree with appellant that it would be premature for this court to entertain the District's alternative argument for summary judgment. As this court not long ago explained:

An appellate court has discretion to uphold a summary judgment under a legal theory different from that applied by the trial court, and rest affirmance on any ground that finds support in the record, provided it proceeds cautiously so as to avoid denying the opposing party a fair opportunity to dispute the facts material to the new theory. That course presupposes that there will be no procedural unfairness, that is that the opposing party had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual and legal presentation with respect thereto. We have cautioned that it usually will be neither prudent nor appropriate for this court to affirm summary judgment on a ground different from that relied upon by the trial court. Among the reasons cited for this propo-

---

considered unable) to perform the functions of his particular job without accommodation. *See, e.g., Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). So, for example, it was not enough for appellant to show that he was unable to lift heavy objects, or that the PSC did not deem him well enough to perform the duties of a pipeline engineer. Although appellant presented sufficient evidence that he was "disabled" within the meaning of the Rehabilitation Act and the HRA when he went on leave without pay and applied for disability benefits in late 2000, the parties disagree as to whether he showed that he remained disabled within the limitations period, or that the PSC regarded him as disabled during that period. (For the first time in his reply brief, appellant advances the additional argument that even if he was no longer disabled or regarded as disabled by 2003, the PSC unlawfully discriminated against him at that time on the basis of his previous history of disability. *See Adams v. Condoleezza Rice, Sec'y of State*, 531 F.3d 936, 945 (D.C.Cir. 2008). We find it unnecessary to address this contention, which might require appellant to amend his pleadings.)

**73.** *See* Super. Ct. Civ. R. 56(f).

**74.** Super. Ct. Civ. R. 30(b)(6).

sition are that the issues are not ripe for consideration, not clearly presented by the record or simply because it would be better to leave to the trial court the task of sifting through the summary judgment record.[75] These considerations guide us here—especially because of the unresolved discovery questions raised by appellant's Rule 56(f) affidavit. The resolution of those questions was committed to the discretion of the trial court.[76] The trial court not having exercised that discretion, we cannot substitute our own judgment of the matter,[77] but we can say that appellant's claimed need to depose his former superior at the PSC is not implausible. Where an employee claims that his employer mistakenly regarded him as disabled, the inquiry of necessity "focuses on the reactions and perceptions of the employer's decisionmakers who worked with the employee."[78] The District complains of the somewhat conclusory nature of appellant's Rule 56(f) affidavit and asserts that appellant's former supervisor was not involved in the decision not to reinstate appellant in 2003, but these are matters best left to the trial court to evaluate. If the trial court found appellant's affidavit unduly vague or otherwise questionable, it could have required appellant to supplement or clarify it. "[I]t is incumbent on the court to make sure that the parties have had an opportunity to develop the record before ruling on a summary judgment motion, particularly where, as here, a party claims the need for discovery."[79]

In short, even setting to one side the genuine benefit for appellate review of having the trial court study the record first and provide us with its informed view of the sufficiency of the evidence to raise a genuine issue of material fact, we can have no confidence that appellant has had the requisite opportunity to make the record in support of his position. We therefore decline the District's invitation to affirm on the alternative ground that appellant cannot establish a *prima facie* case of disability discrimination. In so doing, we express no opinion on the merits of that question.

### III.

For the preceding reasons, we reverse the award of summary judgment to the District and remand for further proceedings consistent with this opinion. Our decision does not preclude the entry of partial summary judgment for the District. Because appellant did not provide notice in compliance with D.C.Code § 12–309, the District is entitled to judgment as a matter of law on appellant's HRA claims to the extent they seek unliquidated damages. And our decision leaves it open for the trial court eventually to consider whether the District is entitled to summary judgment because appellant cannot establish a *prima facie* case of unlawful disability discrimination. We leave these and other matters for future resolution.

*So ordered.*

---

**75.** *Franco v. District of Columbia*, 3 A.3d 300, 307 (D.C.2010) (internal quotation marks and citations omitted).

**76.** *Flax v. Schertler*, 935 A.2d 1091, 1102 (D.C.2007) ("We review a trial court's denial of a request for discovery premised on a Rule 56(f) affidavit for abuse of discretion.").

**77.** *Id.*

**78.** *Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir.2008) (internal quotation marks and brackets omitted).

**79.** *Travelers Indem. Co. of Ill. v. United Food & Commer. Workers Int'l Union*, 770 A.2d 978, 995 n. 21 (D.C.2001).