*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-PR-0824

PATRICK GARNER, APPELLANT,

V.

THE UNIVERSITY OF TEXAS AT AUSTIN, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2021-LIT-000033)

(Hon. Carmen G. McLean, Trial Judge)

(Argued November 29, 2023            Decided June 20, 2024)

*Valerie J. Edwards* for appellant.

*Robert E. Grant*, with whom *James P. Lillis* was on the brief, for appellee The University of Texas at Austin.

*Heather L. Mehigan* for appellees Catholic Relief Services, St. Stephen Martyr Catholic Church, and St. Mary of the Assumption Catholic Church and School of Texas.

Before EASTERLY,[*] MCLEESE, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: In 2001, John Michael Garner ("the Decedent"[1]) executed several estate-planning documents, including a trust and a durable general power of attorney ("DGPOA").  The Decedent was the beneficiary of the trust during his lifetime and he named four charitable entities as beneficiaries after his death. The trust document designated the Decedent as trustor and first trustee and designated the Decedent's nephew, appellant Patrick Garner, as successor trustee in the event of the Decedent's unwillingness or inability to serve as trustee.  The DGPOA appointed Mr. Garner as attorney-in-fact to act on the Decedent's behalf in the event that the Decedent became temporarily or permanently incapacitated and gave Mr. Garner broad authority to take any action on the Decedent's behalf as if the Decedent were acting himself.

In 2021, when the Decedent was incapacitated, and without having spoken to the Decedent about the matter, Mr. Garner, acting as attorney-in-fact under the DGPOA, amended the trust to replace the charitable contingent beneficiaries with

---

[*] Associate Judge AliKhan was originally assigned to this case.  Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Judge Easterly has been assigned to take her place on the panel. *See* Administrative Order 1-24.

[1] References to "Mr. Garner" are to the appellant, Patrick Garner.

himself, making him the sole recipient of the trust assets, which at that point totaled almost $3,000,000.

After the Decedent died, Mr. Garner brought a declaratory judgment action against the beneficiaries seeking a declaration as to the propriety of the amendment. The parties cross-moved for summary judgment and the Superior Court granted the beneficiaries' motion, declaring the amendment void as a violation of Mr. Garner's fiduciary duty to the Decedent as attorney-in-fact under the DGPOA and his duty of loyalty to the beneficiaries as successor trustee under the trust. The trial court also concluded that an exculpatory clause in the DGPOA insulating Mr. Garner from claims of breach of fiduciary duty was unenforceable as against public policy.

We assume without deciding—based on the parties' shared understanding of the applicable law—that Mr. Garner, as attorney-in-fact under the DGPOA, owed a non-waivable common-law duty to the Decedent to act in accordance with the Decedent's reasonable expectation to the extent actually known and, otherwise, in his best interest. We agree with the trial court that summary judgment for the appellees is warranted on the ground that no reasonable factfinder could conclude on the undisputed facts that, in executing the trust amendment, Mr. Garner was acting in accordance with the Decedent's reasonable expectation or in the Decedent's best interest. We also conclude that a DGPOA clause seemingly

foreclosing claims of breach of fiduciary duty against Mr. Garner is inoperative, as the parties agree that the duty at issue is not waivable. In light of those holdings, we need not decide whether Mr. Garner also breached any duty of loyalty he owed to the beneficiaries as successor trustee. We therefore affirm the Superior Court's order granting summary judgment for the appellees.

## I. Background

### A. Facts

#### 1. The Estate-Planning Documents

The following facts appear, unless otherwise noted, to be undisputed. In 2001, the Decedent, a long-time employee of the United States Department of State living in Washington, D.C., executed several estate-planning documents, including a trust and a DGPOA.

The trust document names the Decedent as the trustor and first trustee of the trust. It designates the Decedent as its sole beneficiary during his lifetime and specifies that, after the Decedent's death, the trustee shall distribute forty percent of the trust assets to the University of Texas at Austin (for the purchase of books, manuscripts, and materials for the Nettie Lee Benson Latin American Library Collection); forty percent to Catholic Relief Services World Headquarters; ten

percent to St. Stephen Martyr Roman Catholic Church; and ten percent to St. Mary's Roman Catholic Church and School.

Among the powers of the trustor is the right to revoke or vacate the trust at any time during the trustor's lifetime as well as the right to "change, alter, or amend [the trust] . . . and to change any or all of the beneficiaries of [the] Trust, or to wholly divest them of any rights to property comprising the Trust Estate, or to limit said beneficiaries in any of their interests or rights herein." The trust provides that, "[a]fter the death of Trustor, the Trustee shall hold, manage and distribute the remaining Trust Estate" to the beneficiaries.

The trust designates Mr. Garner as successor trustee; Mr. Garner would assume the role of trustee "[i]n the event [the Decedent] is unwilling or becomes unable, for any reason, to continue to serve as Trustee." The Decedent made this designation despite the fact that he and Mr. Garner had had extremely limited, and almost no face-to-face, interaction over many years. At the time, Mr. Garner was approximately twenty-one years old and was attending college.

The DGPOA, meanwhile, was intended "to provide the fullest possible authority for [the] Attorney-in-Fact to act on [the Decedent's] behalf and in [the Decedent's] place and stead in the event that [the Decedent] become[s] temporarily or permanently incapacitated." The Decedent appointed Mr. Garner as

attorney-in-fact. The DGPOA authorizes Mr. Garner, as attorney-in-fact, "to substitute his judgment for [the Decedent's] and to take any action on [the Decedent's] behalf as fully and effectively as [the Decedent] could do if acting personally."

The DGPOA contains four articles: Article I makes clear that the DGPOA is durable; Article II explains the DGPOA's purpose; Article III sets forth the attorney-in-fact's powers; and Article IV relates to the liability of third parties and the attorney-in-fact. Within Article III is a section specifically relating to the attorney-in-fact's power to conduct "estate planning" and provides, in relevant part, that the attorney-in-fact has authority "to take any action with respect to any existing trust created by [the Decedent] or on [the Decedent's] behalf, including the right . . . to exercise on [the Decedent's] behalf the power to amend any trust . . . and to make any decision whatsoever without limitation with respect to any trust." The DGPOA also exculpates the attorney-in-fact from liability for actions taken under that provision: "no action taken by [the Decedent's] Attorney-in-Fact pursuant to this paragraph shall be considered self-dealing or a violation of his fiduciary duty." Article IV of the DGPOA, among other things, broadly "release[s] and forever discharge[s]" the attorney-in-fact "from any and all liability upon any claim or demand of any nature whatsoever by [the Decedent] or [his] heirs and assigns arising out of the acts or omissions of [the Decedent's] Attorney-in-Fact, except for willful

misconduct or gross negligence." It also provides that the attorney-in-fact "shall have no liability for entering into transactions authorized by this instrument" with the attorney-in-fact in the attorney-in-fact's individual capacity as long as the attorney-in-fact "believes in good faith that such transactions are in [the Decedent's] best interests or the best interests of [the Decedent's] estate and those persons interested in [the Decedent's] estate."

*2. The Decedent's Incapacity and the Amendment to the Trust*

From 2003 (the year of Mr. Garner's college graduation, which the Decedent attended) through mid-2020, Mr. Garner did not interact with the Decedent, except for the occasional thank-you note or Christmas card. Around the summer of 2020, the Decedent fell and was admitted to George Washington University Hospital. The Decedent's physical and mental health deteriorated precipitously thereafter. In August 2020, the hospital filed a Petition for a Temporary Guardian, requesting the appointment of a ninety-day healthcare guardian. *See In re John Michael Garner*, No. 2020-INT-000218. In conjunction with this proceeding, the hospital filed two certificates of incapacity from physicians who had personally examined the Decedent during his stay in the hospital. Both physicians certified that the Decedent suffered from mental incapacity brought on by "acute encephalopathy," a deterioration of brain function.

After becoming aware of the DGPOA, the trial court denied the hospital's petition for the appointment of a guardian because Mr. Garner was empowered, as attorney-in-fact, to make healthcare and financial decisions on behalf of the Decedent. In August 2020, after the Decedent had become incapacitated, Mr. Garner was contacted and learned for the first time of his roles under the estate documents. Mr. Garner found the fact that the Decedent had named him "surprising."

On or around December 7, 2020, the Decedent suffered a stroke or series of strokes and was admitted to Howard University Hospital. Mr. Garner did not communicate with the Decedent after this point and it is undisputed that he never attempted to communicate with the Decedent about his estate plan.

On December 23, 2020, Mr. Garner, acting as attorney-in-fact for the Decedent due to the Decedent's incapacity, executed the amendment to the trust. The amendment removed the existing contingent beneficiaries and substituted Mr. Garner in their place. The amendment therefore had the effect of distributing one hundred percent of the trust assets—which by that point amounted to approximately $3,000,000—to Mr. Garner upon the Decedent's death. Mr. Garner knew that the Decedent's death could be imminent and did not discuss the amendment with the Decedent. The Decedent died on January 5, 2021.

**B.     Procedural History**

In April 2021, Mr. Garner filed a petition in the Probate Division of the Superior Court seeking abbreviated probate and unsupervised administration of the Decedent's estate. That petition did not identify the charitable beneficiaries as interested persons, instead listing only Mr. Garner as the trust's beneficiary. The Superior Court denied the petition "without prejudice to the filing of a petition for standard probate that is accompanied by a list of interested persons that includes all the trust beneficiaries under the trust . . . prior to its amendment on December 23, 2020."

In June 2021, Mr. Garner sought a declaratory judgment "as to the efficacy of the Amendment executed by [Mr. Garner] pursuant to the authority granted to him under the Power of the Attorney and the Trust," naming the charitable beneficiaries as defendants. The parties filed cross-motions for summary judgment. On summary judgment, the trial court considered "(1) whether Mr. Garner breached his fiduciary duty as Successor Trustee when he executed the Amendment, (2) whether Mr. Garner breached his fiduciary duty as Attorney-in-Fact when he executed the Amendment, and (3) [whether] the exculpatory clause in the DGPOA is enforceable or against public policy."

The trial court agreed with the beneficiaries on each question. First, it concluded that Mr. Garner as successor trustee owed a duty of loyalty to the beneficiaries, that "the Amendment created a conflict between Mr. Garner's fiduciary duties [under the Trust] and his personal interests," and that the amendment "harmed the beneficiaries because they had future interests in the Trust." Second, the trial court concluded that Mr. Garner as attorney-in-fact under the DGPOA owed the Decedent a common-law fiduciary duty requiring him to act in good faith and that Mr. Garner breached this duty because the Decedent never "discuss[ed] his finances, estate plan, or the disposition of his assets upon his death with Mr. Garner" and, "[c]onsidering the material benefit Mr. Garner would acquire if the Amendment were enforced, Mr. Garner could not rely solely on the language of the DGPOA to divest all previous beneficiaries without seeking informed consent from Decedent or providing proof of acting in good faith and disclosure of necessary facts to Decedent." Finally, the trial court determined that Mr. Garner executed the Amendment "in bad faith and with reckless indifference to the purposes of the trust and interests of the beneficiaries" and that the exculpatory clause was therefore "unenforceable and against public policy."

This appeal followed.

## II.    Analysis

Mr. Garner asserts that the trial court erred in granting summary judgment for the beneficiaries because he acted within the scope of his express authority under the DGPOA in amending the trust to replace the designated contingent beneficiaries with himself.  We disagree.  Applying (without deciding the correctness of) the parties' consensus view that, notwithstanding the terms of the DGPOA, Mr. Garner was subject to a non-waivable duty to act consistently with his uncle's reasonable expectation or best interest, we hold that, on the undisputed facts, a reasonable factfinder could not conclude that Mr. Garner did so.

### A.    Standard of Review

"This court reviews a grant or denial of summary judgment de novo and applies the same standard as the trial court does in considering the motion for summary judgment." *Bowyer v. Reinhardt*, 277 A.3d 1259, 1265 (D.C. 2022).  "On appeal, this court is required to conduct an independent review of the record to determine whether any relevant factual issues exist by examining and taking into account the pleadings, depositions, and admissions along with any affidavits on file, construing such material in the light most favorable to the party opposing the motion." *Id.* (alterations and internal quotations omitted).  "Summary judgment is proper if, when the facts are viewed in the light most favorable to the non-moving

party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (alterations and internal quotations omitted).

## B.    Discussion

The trial court granted summary judgment for the appellees and voided the amendment to the trust because, in its view in light of the undisputed facts, Mr. Garner violated both a fiduciary duty to the Decedent as attorney-in-fact under the DGPOA and a duty of loyalty to the beneficiaries as trustee of the trust. The trial court also concluded that the DGPOA's exculpatory clause did not shield Mr. Garner's conduct. We agree with the trial court that, on the undisputed facts, Mr. Garner as attorney-in-fact violated a non-waivable duty to the Decedent, and we affirm on that basis without reaching any duty Mr. Garner owed to the beneficiaries under the trust.

In addressing whether Mr. Garner owed any fiduciary or loyalty duties, the parties in their initial briefs disputed the applicability and scope of various terms of the DGPOA. Mr. Garner argued that the DGPOA expressly authorized the amendment without limitation. In particular, he asserted that Article III of the DGPOA "expressly provided [him] with the unlimited authority 'to take any action with respect to any existing trust,' and the specific authority 'to exercise on [Decedent's] behalf the power to amend any trust . . . and to make any decision

whatsoever without limitation with respect to any trust[.]'" The beneficiaries countered that the plain language of the DGPOA did not provide unlimited authority to Mr. Garner to act as he pleased; instead, the language of Article IV required Mr. Garner to act in good faith and in the best interests of the Decedent. According to the beneficiaries, Article IV "does *not* authorize [Mr. Garner] to engage in self-dealing for his own sake, without respect to Decedent's best interest or the interests of the Charitable Beneficiaries." Mr. Garner responded that the language the beneficiaries pointed to is limited to "transactions" entered into by Mr. Garner and does not apply to amendments to the trust.

The terms of Article III of the DGPOA are unquestionably broad and it is unclear whether they are limited by good-faith and best-interest standards contained in Article IV. We need not decide that question, however, because the parties agreed at oral argument and in supplemental briefing that, irrespective of whether the express terms of the DGPOA give Mr. Garner unfettered authority to amend the trust, the common law imposes an external, non-waivable duty to act in good faith, in accordance with the reasonable expectations of the principal to the extent known or otherwise in the principal's best interest, and within the scope of the authority granted by the principal. *See* D.C. Code § 21-2601.14(a) ("*Notwithstanding provisions in the power of attorney*, an agent that has accepted appointment *shall*: (1) Act in accordance with the principal's reasonable expectation to the extent

actually known by the agent and, otherwise, in the principal's best interest; (2) Act in good faith; and (3) Act only within the scope of authority granted in the power of attorney." (emphasis added)).[2]

The parties, moreover, agree not only that Mr. Garner must have acted in accordance with the Decedent's reasonable expectation or otherwise in the Decedent's best interest but also that this duty entails an objective inquiry regarding the reasonableness of Mr. Garner's view that his actions were consistent with the Decedent's wishes or interests. The parties also cross-moved for summary judgment in the trial court and maintain in this court that the facts are undisputed and that a remand for further factfinding is unwarranted.

---

[2] On November 21, 2022, the D.C. Council passed the Uniform Power of Attorney Amendment Act of 2022 (UPAA), which came into effect on February 23, 2023. D.C. Code § 21-2601.01 *et seq.* (2022), D.C. Law 24-236. "An act done before . . . [February 23, 2023] is not," however, "affected by" the UPAA, D.C. Code § 21-2604.03(4), and the parties agree that the law does not apply to this case because Mr. Garner's amendment to the trust was "[a]n act done before" February 23, 2023. *Id.* The parties also, however, agree that the UPAA reflects and codifies pre-existing common law regarding powers of attorney, including any extra-contractual restraints on an attorney-in-fact's powers under a power of attorney. Accordingly, while the UPAA does not provide the controlling framework for the fiduciary-duty question here, we note that it is consistent with the parties' shared understanding that good-faith, reasonable-expectation or best-interest, and scope standards limit the authority of an attorney-in-fact notwithstanding any unlimited language in the power-of-attorney document itself.

Accordingly, the question before us is whether, on the undisputed facts, a reasonable factfinder could conclude that Mr. Garner reasonably believed that he was acting in accordance with the Decedent's expectation or in the Decedent's best interest.[3] We agree with the beneficiaries that the answer is no.

The summary judgment record does not support a conclusion that Mr. Garner reasonably believed that the amendment was consistent with the Decedent's expectation or best interest. Mr. Garner by his own admission had scant contact with

---

[3] The trial court found that summary judgment was appropriate because Mr. Garner was subject to a common-law duty of good faith and the undisputed facts established that Mr. Garner violated that duty. The UPAA defines "good faith" as "honesty in fact," D.C. Code § 21-2601.02(4), raising the question whether it is amenable to resolution on summary judgment. *See William J. Davis, Inc. v. Tuxedo LLC*, 124 A.3d 612, 624-25 (D.C. 2015) ("[G]iven the often subjective nature of determining one's mental state, summary judgment should be granted sparingly on that ground." (alterations, footnotes, and internal quotations omitted)); *3511 13th St. Tenants' Ass'n v. 3511 13th St., N.W. Residences, LLC*, 922 A.2d 439, 444 (D.C. 2007) ("In general, . . . summary judgment is not appropriate and should be granted sparingly in cases involving motive or intent as material elements." (internal quotations omitted)) (citing cases). We need not address that issue, however, because we rely on the duty to act in accordance with the principal's reasonable expectation or best interest. The parties have briefed that duty, and they agree that it applies, it entails an objective inquiry, and no further factfinding is necessary. *See Jaiyeola v. District of Columbia*, 40 A.3d 356, 372 (D.C. 2012) (this court "has discretion to uphold a summary judgment under a legal theory different from that applied by the trial court, and rest affirmance on any ground that finds support in the record, provided it proceeds cautiously" (internal quotation omitted)).

the Decedent over almost two decades and never spoke with the Decedent about his finances or estate. He had no affirmative basis to believe that the Decedent had changed his mind about his selection of beneficiaries—a selection that had been in place for nineteen years and that the Decedent could have changed before his incapacity if he had wanted to. Simply put, Mr. Garner presented no evidence that he had any reason to believe that the Decedent would have wanted an amendment to the trust, let alone the amendment Mr. Garner made.

Mr. Garner posited theories for why the Decedent named the charitable beneficiaries without really meaning it, but those theories were, by his own word, mere "speculation."[4] Mr. Garner asserted that the Decedent and the Decedent's brother had an acrimonious relationship, but, even taking that assertion as true, it does not explain why the Decedent chose the beneficiaries he chose rather than naming other family members and simply disinheriting that brother. Mr. Garner also claimed that the Decedent had affection for his nieces and nephews and named the beneficiaries only because Mr. Garner and his cousins were too young, but that does

---

[4] After the Decedent died, Mr. Garner learned of potential reasons the Decedent would have named the beneficiaries: the Decedent used to visit the Nettie Lee Benson Latin American Library while in college; the Decedent was a Catholic; the Kennedys, whom the Decedent admired, attended St. Stephen Martyr Roman Catholic Church; and the Decedent went to school and church at St. Mary's Roman Catholic Church and School. The evidence does not, however, indicate that Mr. Garner was aware of those facts when he made the amendment.

not explain why the Decedent did not amend the trust himself once his nieces and nephews were older (and we note that Mr. Garner was an adult at the time the Decedent created his estate documents; if the Decedent had wished to name Mr. Garner with the hope that he would later distribute the assets to all of the cousins, he could have designated Mr. Garner in 2001). Nor does it explain why Mr. Garner amended the trust to make himself the sole beneficiary rather than including his cousins.

We also find it relevant that, after he made himself the sole beneficiary of the Decedent's trust, Mr. Garner tried to probate the Decedent's will through an abbreviated process that would not have alerted the prior trust beneficiaries of the Decedent's designation.

Although Mr. Garner alludes to his speculative beliefs about the Decedent's reasons for naming the beneficiaries, he relies primarily on the broad authority set forth in the DGPOA and the apparent waiver of any self-dealing liability as evidence that the Decedent reasonably expected that Mr. Garner could amend the trust in essentially any manner. To be sure, the terms of the DGPOA are relevant to a determination of the Decedent's expectations and his trust in Mr. Garner. *See Sibley v. St. Albans Sch.*, 134 A.3d 789, 803 (D.C. 2016) ("To determine the testator's intent, the court looks first to the language of the document[.]"). But if broadly

permissive language in a DGPOA could by itself serve as evidence that the attorney-in-fact acted in accordance with the principal's wishes, then the external, non-waivable duty—which all parties agree applies—would function as no constraint at all. Thus, proceeding on the parties' shared understanding of the law, even where a DGPOA appears to grant virtually unfettered authority, the attorney-in-fact must point to something else supporting their claim that a particular act was in accordance with the principal's reasonable expectation or best interest. Mr. Garner has failed to do so here.

Finally, the trial court concluded that the DGPOA's exculpatory clause could not shield Mr. Garner's amendments to the trust because "Mr. Garner's execution of the Amendment was in bad faith and with reckless indifference to the purposes of the trust and interests of the beneficiaries and, as a result, application of the exculpatory clause in this matter is unenforceable and against public policy." There are two "exculpatory" clauses potentially at issue here. One is the more general provision in Article IV of the DGPOA that "release[s] and forever discharge[s]" the attorney-in-fact "from any and all liability upon any claim or demand of any nature whatsoever by [the Decedent] or [the Decedent's] heirs and assigns arising out of the acts or omissions of [the Decedent's] Attorney-in-Fact, except for willful misconduct or gross negligence." Regardless of the enforceability of this exculpatory clause, it does not appear to apply here: Mr. Garner does not face

liability from a claim or demand by any party; rather, he affirmatively sought a declaratory judgment as to the efficacy of his amendment. The second clause at issue is in a specific DGPOA paragraph relating to the trust, and it states that "no action taken by [the Decedent's] Attorney-in-Fact pursuant to this paragraph shall be considered self-dealing or a violation of his fiduciary duty." Whether or not this clause would be enforceable as a matter of public policy, the parties agree that an attorney-in-fact's duty to act in accordance with the principal's reasonable expectation to the extent actually known or in the principal's best interest is not waivable. Accordingly, this clause could not have relieved Mr. Garner of his duty to act in accordance with the Decedent's reasonable expectation or best interest.

## III.   Conclusion

For the foregoing reasons, we affirm the trial court's order granting appellees' motions for summary judgment.

*So ordered*.