# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-5076

September Term, 2025

FILED ON: MAY 5, 2026

EVELYN KAYODE,

APPELLANT

v.

TODD BLANCHE,

APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-03802)

Before: SRINIVASAN, *Chief Judge*, and HENDERSON and GARCIA, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the district court's order granting summary judgment be **AFFIRMED**.

I.

Evelyn Kayode was a Special Agent in the Department of Justice's Office of the Inspector General (OIG) from December 2015 through November 2019. At OIG, Kayode worked on contract- and grant-fraud investigations in the Fraud Detection Office (FDO). Initially, her performance reviews were largely positive.

Kayode's problems at the FDO began in 2016, when she alleges a coworker began harassing her and treating her rudely because she is a black woman of Nigerian origin. Kayode filed a discrimination complaint in May 2018, shortly after which she was reassigned to a new first-line supervisor, Amber Howell. Kayode was also supervised by Howell's direct supervisor, Lewe Sessions. Soon after Kayode's reassignment, Howell and Sessions began repeatedly raising concerns that she was not making timely progress on her investigations. That feedback was reflected in Kayode's 2017 performance evaluation, which rated her performance as "successful" overall but noted timeliness as an area in which Kayode should improve. J.A. 617–20. Howell also identified problems with Kayode's written work and eventually assigned her a writing coach. On November 28, 2018, Kayode got into a verbal altercation with Howell over her performance feedback, leading Howell to issue Kayode a letter of reprimand.

Kayode's deteriorating relationship with her supervisors caused her to develop anxiety that aggravated her hypertension and irritable bowel syndrome. Beginning in November 2018, Kayode submitted three formal requests for reasonable accommodation for her condition. Her first request, submitted on November 14, 2018, sought six weeks of telework. OIG approved that request. On January 9, 2019, Kayode submitted a second accommodation request for an additional eight weeks of telework and received a two-week extension of her prior accommodation while OIG reviewed the request. A few days later, Sessions emailed Kayode to express frustration that Kayode had missed deadlines for written reports and repeatedly failed to meet an established requirement during her telework period that she provide daily check-in emails detailing the work she completed.

After receiving Sessions' email, Kayode emailed several OIG officials stating that she was "unable to physically and mentally cope with work" and that she "would like to explore the opportunity of being reassigned to another office effective immediately." J.A. 376. Kayode's email caused OIG officials to refer her for a fitness-for-duty examination, including a psychological assessment. While her fitness was being assessed, Kayode was temporarily detailed to an administrative role in another branch in OIG's Investigations Division.

In April 2019, a clinical forensic psychologist evaluating Kayode's fitness for duty concluded that her anxiety was "situational," "limited to her issues in the workplace," and not reflective of "more serious mental health issues." J.A. 647. Although the psychologist predicted that Kayode might "experience increased stress" upon her return to the FDO, she did not expect Kayode "to suffer any sudden or subtle incapacitation once returned to duty." J.A. 649–50. In July 2019, Kayode was cleared to return to the FDO.

That month, in advance of her return to the FDO, Kayode submitted her third accommodation request, which she proposed would cover thirteen weeks from July through October 2019 and would include a package of five accommodations: full-time telework; a modified break schedule; "[c]ommunicating in email when possible"; recording meetings and providing transcripts; and providing a minimum of 72 hours' notice prior to an in-person or teleconference meeting. J.A. 692. Along with her request, Kayode submitted a note from her primary care physician indicating that Kayode "has a history of anxiety and stress in the office environment" and that "she would benefit from additional telework abilities." J.A. 693. The doctor's note also asked OIG to provide Kayode with an identical list of accommodations to those in her third request.

Sarah Lake, the Assistant Inspector General of OIG's Investigations Division, denied Kayode's request, explaining that the combined accommodations would make it "very difficult, if not impossible" for Kayode to perform her duties. J.A. 698. Noting that Kayode's doctor's note provided "no additional information" about her medical condition, Lake invited Kayode to submit additional documentation. *Id.*; J.A. 700. Lake also proposed several alternative accommodations, including one day of telework per week, additional writing assistance, and scheduled time for breaks and counseling. After Kayode twice rejected all of Lake's proposals and declined to submit additional documentation, Lake followed up with a final letter informing Kayode that she would need "sufficient medical information" to "understand the nature of [Kayode's] condition and [her] limitations" and any alternative accommodations Kayode wanted Lake to consider. J.A. 706. Kayode did not provide any additional documentation, nor did she propose alternative accommodations. She spent the majority of her remaining time at OIG on medical leave and left the agency in November 2019.

Kayode then filed this lawsuit, asserting, as relevant here, two claims under the Rehabilitation Act: denial of a request for reasonable accommodation, and retaliation for requesting reasonable accommodation. The district court granted summary judgment to OIG on both claims. Kayode appealed.

II.

We review the district court's grant of summary judgment de novo. *Ali v. Regan*, 111 F.4th 1264, 1273 (D.C. Cir. 2024). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must "be viewed in the light most favorable to the nonmoving party," and "the court must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

4

A.

Kayode first challenges the district court's grant of summary judgment on her accommodation claim. She contends that OIG wrongly denied two of her requests for reasonable accommodation: her July 2019 request for accommodations and her January 2019 request for reassignment. We affirm the district court's grant of summary judgment to OIG with respect to each.

"An employer fully satisfies its statutory obligation [under the Rehabilitation Act] by offering an accommodation that is reasonable, even if it is not the one preferred by the employee." *Ali*, 111 F.4th at 1269 (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998)). To identify an appropriate accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). The "interactive process" is not an "end in itself," but rather an "exchange of information" between the employer and the employee designed to "facilitate the identification of an appropriate accommodation." *Ali*, 111 F.4th at 1274 (citations omitted). Courts may scrutinize whether either party's "failure to participate in good faith" has caused "a breakdown in the process" and assign responsibility accordingly. *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)). "[A]n employee that materially obstructs the informational exchange—for example, by withholding relevant medical information—cannot prevail on a failure-to-accommodate claim." *Ali*, 111 F.4th at 1275 (citing *Ward*, 762 F.3d at 31–35; *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1306–07 (D.C. Cir. 2010)).

With respect to Kayode's July 2019 request for accommodations including her request for full-time telework, her refusal to provide the requested medical documentation or propose alternative accommodations caused a breakdown in the interactive process. Because Kayode declined to provide OIG with necessary information about her condition, OIG was unable to determine if there were reasonable accommodations available that would allow Kayode to fully perform her job. Accordingly, Kayode cannot prevail on her claim challenging OIG's denial of her third accommodation request. *See Ward*, 762 F.3d at 31–35; *Stewart*, 589 F.3d at 1308–09.

With respect to Kayode's claim that OIG impermissibly denied her January 2019 request for reassignment to a new position, it is unclear that Kayode even suggested reassignment as an accommodation for her anxiety. Kayode's email merely indicated that she "would like to explore" such a possibility. J.A. 376. And "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) (citations omitted). Even assuming Kayode's January 2019 email to OIG amounted to a request for reasonable accommodation, however, Kayode cannot prevail on such a claim. Whether or not Kayode's January 2019 email informed OIG that she was seeking reassignment as an accommodation, she abandoned any such request during her subsequent conversations with OIG by never reiterating it despite expressly being asked to propose alternative accommodations.

B.

With respect to Kayode's claim of retaliation, a retaliation claim is not actionable unless the challenged employment action is "materially adverse," meaning it "could well dissuade a reasonable worker" from engaging in the protected activity. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). As in the Title VII context, the plaintiff bears the initial burden of establishing a prima facie case of retaliation under the Rehabilitation Act. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). And if the employer identifies "some legitimate, non-retaliatory reason for the adverse action," the plaintiff retains the ultimate burden to show that the proffered explanation is pretextual and the employer's true motive was retaliatory. *Id.*

In her amended complaint, Kayode identified eighteen discrete actions that she contends were retaliatory, but she has forfeited her arguments as to many of these actions by failing either to raise them on appeal or argue them before the district court. Accordingly, we consider only Kayode's allegations that: (i) Howell and Sessions accused her of deficient work performance and untimeliness; (ii) Howell was verbally abusive during their November 2018 performance meeting; (iii) Howell issued a letter of reprimand following that meeting; (iv) OIG officials removed Kayode from FDO sites and email lists during her temporary detail; and (v) Sessions restricted Kayode from entering the FDO office while she was on detail. None of those actions gives rise to a successful retaliation claim.

For the first time on appeal, Kayode argues that those various instances of alleged retaliation should be aggregated for purposes of the material adversity requirement. But even assuming Kayode has not forfeited that argument—and even further assuming that discrete actions of that sort can in fact be considered in the aggregate—Kayode has failed to raise any genuine dispute as to whether the legitimate, nonretaliatory explanations that OIG has provided for the first three of the challenged actions are pretextual.

The record is replete with evidence that Howell and Sessions raised concerns about Kayode's timeliness and writing skills well before she ever requested disability accommodations, and Kayode has failed to raise a genuine dispute as to whether their continued performance criticism after November 2018 could be considered a pretext for retaliation. Kayode's own account of her November 28, 2018, performance meeting with Howell confirms OIG's nonretaliatory explanation: Kayode was resistant to feedback and argumentative with her supervisor. Kayode therefore cannot succeed in showing that any of her supervisors' performance-related criticism, nor the November 28th altercation and Howell's related letter of reprimand, were pretextual.

As for the two remaining challenged actions, neither is materially adverse on its own, nor do they clear that bar even if considered in the aggregate. Removing Kayode from FDO sites and restricting her access to the office during her temporary detail do not qualify as materially adverse actions of the kind that can substantiate a retaliation claim. *See Burlington N. & Santa Fe Ry.*, 548 U.S. at 68; *see also Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009).

\* \* \* \* \*

For the foregoing reasons, we affirm the district court's grant of summary judgment to OIG.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

FOR THE COURT:
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk